Paul J. **WOJCIECHOWSKI**, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY and IBM Corporation, Defendants.**

No. 98 Civ. 1229(BDP).

United States District Court, S.D. New York.

Dec. 1, 1999.

Richard A. Kerner, Kerner & Kerner, New York City, for plaintiff.

Paul George Huck, Donald J. Harman, New York City, Carl Judah Schaerf, Les-

ter, Schwab, Katz & Dwyer, New York City, for defendant Metropolitan Life.

John Houston Pope, Davis, Markel & Edwards, New York City, for defendant IBM.

### MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Paul J. Wojciechowski brings this action against defendants Metropolitan Life Insurance Company ("Met Life") and his former employer IBM Corporation ("IBM"), under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1001, et seq., alleging that his claims made pursuant to the Long Term Disability and Separation Pay plans of IBM were wrongfully denied. Plaintiff seeks money damages and a declaratory judgment that he was and still is entitled to the benefits which he was denied. Before this Court are defendants' motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendants motions are granted.

### BACKGROUND

Plaintiff was hired by IBM in February of 1980. In February of 1995, he became a customer operations manager in IBM's National Service Division in White Plains, New York. His group handled support services for IBM consultants, which entailed, *inter alia*, inputting consultant contracts into the computer system, creating and tracking billing for each contract, creating reports relating to the contracts and otherwise assisting the financial division.

During his tenure at IBM, plaintiff was a participant in IBM's Long Term Disability Plan (the "LTD" plan) and IBM's Separation Allowance Plan (the "SAP"). IBM established and maintains both plans, which provide eligible IBM employees with certain benefits in the event of long term disability or separation, under certain circumstances, from IBM.

### 1. Long–Term Disability

The LTD plan is insured under a group policy issued by Met Life to IBM, wherein Met Life is the claims administrator. The Plan provides for the payment of LTD benefits in the event of a participant's total disability.

Under the plan, totally disabled,

means that during the first 12 months after you complete the waiting period, you cannot perform the important duties of your regular occupation with IBM because of a sickness or injury. After expiration of that 12 month period, totally disabled means that, because of a sickness or injury, you cannot perform the important duties of your occupation *or of any other gainful occupation* for which you are reasonably fit by your education, training or experience.

LTD Summary Plan Description ("SPD") § 2.4.1.

In August of 1995, plaintiff was told that his division at IBM was relocating to Raleigh, North Carolina, effective February 1, 1996. After attending several meetings in Raleigh as part of this transition, plaintiff requested not to be transferred to Raleigh so that he could continue seeing his physician who was treating him for back and spinal injuries, among other symptoms, which he suffered as a result of a car accident that occurred on December 26, 1993. IBM complied with his request, assigning him the non-managerial position of liaison between the Financial group that remained in White Plains, and the Customer Operations group that relocated to North Carolina.

Before assuming this assignment, plaintiff's medical problems, verified in medical findings by his doctor, neurologist Kailash C. Pani, resulted in two consecutive three month leaves beginning January 16, 1996, under IBM's Sickness and Accident Plan (the "S & A Plan"). On April 16, 1996, following an examination of plaintiff, IBM's consultant Dr. Elliott Gross issued a report concluding that plaintiff could re-

turn to work. In response, on June 16, plaintiff issued a six page rebuttal to Dr. Gross' report in which he refuted and corrected alleged inaccuracies and errors in the Gross report.

Plaintiff's doctor produced several reports detailing plaintiff's medical problems and advising that plaintiff abstain from full-time work. Those problems included intense photophobia or hypersensitivity to light which caused tearing, severe back and spinal injuries, severe headaches and periodic depression and insomnia. Dr. Pani's report dated May 6, 1996, concluded that "the patient is advised to refrain and abstain from working with computer terminals of any kind. He is completely and permanently disabled to perform any substantial and material duties of his job at IBM."

Following a letter dated July 25, 1996, sent to him by his supervisor Frank J. Bon advising him that if he did not report to work by August 1 he would be terminated as an employee, plaintiff returned to work at IBM on August 5, 1996. He alleges that he experienced immediate head and eye pain caused by bright lights and 10 to 15 minute stints in front of a computer. Plaintiff met with IBM's Dr. J.M. Gonzalez the next day and a week later, plaintiff resumed his S & A leave. Following this incident, plaintiff's physician, Dr. Pani performed various diagnostic procedures, tests and examinations, concluding again that plaintiff was "completely and permanently disabled." Plaintiff made a claim for LTD benefits under the Plan on October 21, 1996. His S & A leave expired on December 19, 1996.

Plaintiff was examined by other doctors, both on behalf of defendants and following referral by his physician. Dr. Robert L. Bertrand, for example, reviewed plaintiff's medical records on behalf of Met Life and determined that plaintiff suffered form a "seizure disorder." On January 7, 1997, plaintiff was examined by Dr. Orly Avitzur, a physician designated by Met Life whose diagnosis conflicted with that of Dr. Pani in that his medical problems were found to be less severe. Dr. Gross, an independent neurologist retained by IBM who examined plaintiff, also submitted a report on plaintiff's condition to Met Life concluding that there was no evidence of neurological abnormality. Plaintiff also offers the letters of four of his IBM co-workers describing personal observations of his ailments.

Plaintiff was advised of the denial of his claim on March 5, 1997. In that letter, Met Life advised that it had "thoroughly reviewed the information submitted by [plaintiff's] attending physician Dr. Pani," as well as the reports of Dr. Gross and Dr. Atvizur. March 5, 1997 Letter of David Ruiz at 2. The letter concluded: "Based on the information above, we have determined that you do not meet the definition of disability as defined in the group plan. Therefore, we have no alternative but to disallow your claim." *Id.* Plaintiff appealed the denial of his LTD claim to Met Life in August, 1997, which was denied by letter dated October 16, 1997.[1]

## 2. Severance Pay

Plaintiff claims he was wrongly denied severance pay by IBM under its Separation Allowance Plan ("SAP"). While plaintiff's application for LTD benefits was pending, plaintiff alleges that he was "tacitly discharged." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 8. He received a Consolidated Omnibus Budget Reconciliation Act ("COBRA") package of health insurance extension documents from IBM in February of 1997. Bon, plaintiff's supervisor, alleges in an affidavit

---

1. That letter states in part,

 We have reviewed all the medical and vocational information in our possession in conjunction with an Independent physician's file review.

 . . . .

 We have determined that the medical evidence does not support a disability which would preclude Mr. Wojciechowski from performing the duties of his own occupation as defined by the group plan.

that because plaintiff had not qualified for LTD benefits when his S & A leave expired on December 19, 1996 and he did not return to work nor inquire about doing so, plaintiff was deemed to have voluntarily resigned from IBM. Affidavit of Frank J. Bon at 3. Bon avers that plaintiff stopped receiving a paycheck and was sent a check for his accrued vacation days. Bon states that when plaintiff contacted him at the end of February 1997 about his termination from the company, he informed plaintiff that "he was considered to have separated himself from the company because he did not have a valid medical excuse to be out once his S & A benefits expired and he had not returned to work." Bon Aff. at 3.

In the Fall of 1997, Bon states that plaintiff inquired about the possibility of receiving separation pay. Bon informed plaintiff by letter dated January 16, 1998 that because he failed to return to work once his S & A benefits had expired he was deemed to have resigned.

On or about January 14, 1998, plaintiff commenced an action against Met Life in New York State Supreme Court, Rockland County alleging it had wrongfully denied his application for LTD benefits. Met Life removed the action to federal court. Plaintiff filed an amended complaint in this Court on August 13, 1998, adding IBM and six other companies as defendants and a second cause of action against IBM alleging wrongful denial of severance pay. By stipulation dated January 12, 1999, the action was dismissed without prejudice against all defendants other than IBM and Met Life.

Plaintiff challenges the denial of benefits under 29 U.S.C. § 1132(a)(1)(B), which provides that "a participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir.1996); Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991). The Court is to perform "the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." McNeil v. Aguilos, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 382 (2d Cir.1996); In re State Police Litigation, 88 F.3d 111, 123 (2d Cir.1996). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. Hayes, 84 F.3d at 619; United States v. Rem, 38 F.3d 634, 644 (2d Cir.1994); Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. Wernick, 91 F.3d at 382.

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. In re State Police Litigation, 88 F.3d at 123; Gallo v. Prudential

*Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research,* 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990)) (other citations omitted).

## 2. Long–Term Disability Claims Against IBM

■ IBM, plaintiff's former employer, argues that it is not a proper defendant regarding the disability claims because IBM is not one of the plan's named fiduciaries and did not otherwise exercise any discretionary control over the determination of plaintiff's claim. This Court agrees with defendant IBM.

■ ERISA permits an employer to delegate fiduciary responsibilities to an insurer in administering an employee benefit plan. *See Libbey–Owens–Ford Co. v. Blue Cross and Blue Shield Mutual of Ohio,* 982 F.2d 1031, 1035 (6th Cir.1993). The Summary Plan Description ("SPD") of IBM's LTD Plan names two fiduciaries: Met Life and the Plan Administrator (IBM's National Human Resource Center), and states, "[t]he fiduciary responsibilities of the named fiduciaries shall be exercisable severally and not jointly, and each named fiduciary's responsibilities will be limited to the specific areas indicated for such named fiduciary." LTD SPD § 2.5.3. The Plan provides that Met Life is the sole fiduciary responsible for handling applications by IBM employees for long-term disability and reviewing claim denials pursuant to Section 503 of ERISA. It confers "discretionary authority" to Met Life in interpreting benefit eligibility. *Id.* IBM plays no part in deciding an employee's claim for long-term disability benefits, other than to cooperate with Met Life's examiners by answering any questions they might have or providing any requested medical information maintained by IBM Medical regarding the particular claimant. IBM is not a fiduciary who can be held liable here. *See Georgas v. Kreindler & Kreindler,* 41 F.Supp.2d 470, 474 (S.D.N.Y. 1999) (employer not fiduciary of benefit plan where plaintiff failed to show that employer played any decision-making role in administration or management of disability insurance benefits).

Plaintiff has presented no evidence indicating that IBM controlled administration of the plan. IBM is thus not a proper party to this action. *See Crocco v. Xerox Corp.,* 137 F.3d 105, 107–08 & n. 3 (2d Cir.1998); *Best v. Nissan Motor Corp.,* 973 F.Supp. 770, 775 (M.D.Tenn.1997). Summary judgment is granted with respect to plaintiff's claims against IBM for denial of long-term disability benefits.

## 3. Standard of Review

ERISA does not set out the appropriate standard of review in actions challenging benefit determinations, but the Supreme Court has articulated the appropriate standards to be applied in actions attacking a denial of ERISA benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone,* the Court held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) of ERISA "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan." 489 U.S. at 115, 109 S.Ct. 948. Plaintiff argues that this Court should review the denial of his claims under IBM's disability plan *de novo* because defendants have not demonstrated that Met Life had discretionary authority in reviewing claims made under the plan. In the alternative, plaintiff argues that if this Court applies the arbitrary and capricious standard to the denial of his LTD claims, Met Life's decision to deny him benefits was not supported by substantial evidence and was tainted by a conflict of interest.

 This Court must apply the arbitrary and capricious standard when reviewing Met Life's decision because, as the Plan's fiduciary and claims administrator, Met Life had discretionary authority to determine eligibility for benefits and to interpret the Plan's terms. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070–71 (2d Cir.1995); *Durr v. Metropolitan Life Insurance Co.,* 15 F.Supp.2d 205, 209 (D.Conn.1998). This scope of review is narrow and is highly deferential to a plan administrator's determination. *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995). Accordingly, a district court can overturn a denial of benefits only if the plan administrator's decision was " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Miller,* 72 F.3d at 1070 (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995)). A district court also cannot substitute its judgment for that of the plan administrator. *Pagan,* 52 F.3d at 442. A district court's review under the arbitrary and capricious standard is limited to the administrative record. *Miller,* 72 F.3d at 1071.

A review of the LTD Summary Plan Description makes clear that Met Life had discretionary authority to determine eligibility for long-term disability payments. The LTD plan specifically provides:

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

LTD SPD § 2.5.3.

Plaintiff contests the assertion that Met Life has discretionary authority to administer the plan because defendants have furnished only a Summary Plan Description ("SPD") of the LTD plan rather than the formal IBM LTD plan, with governmental approval. However, plaintiff cites no authority stating that this is grounds for not applying the arbitrary and capricious standard of review. Furthermore, our Circuit has validated the use of a SPD as the vehicle through which an employer is to provide necessary plan information to its employees. *See American Federation of Grain Millers, AFL—CIO,* 116 F.3d 976, 982 (2d Cir.1997).

 Met Life's decision was not arbitrary and capricious. Met Life reviewed the reports submitted by plaintiff's doctor as well as those of treating physicians Lancman and Borchert who examined plaintiff following referrals from his own physician, Dr. Pani. In addition, it reviewed evaluations from doctors Avitzur, Gross and Bertrand. The Plan Administrator considered all of the conflicting evidence and made a determination. The plan administrator's decision to deny plaintiff's claim was supported by substantial evidence.

Plaintiff states further that Met Life's decision was tainted by a conflict of interest. He urges this Court to apply the reasoning followed in *Velez v. Prudential Health Care Plan of New York, Inc.,* 943 F.Supp. 332 (S.D.N.Y.1996), in which a challenge to the denial of benefits under an employee benefit plan was reviewed under a measure of deference lower than that normally appropriate for discretionary benefits decisions by an ERISA plan administrator. The court in *Velez* noted the "substantial potential for conflict to exist where a plan administrator or fiduciary serves the dual roles of a decision-maker with regard to the granting or denial of claims and an insurer which must constantly strive to make its revenue exceed its costs." 943 F.Supp. at 339 (internal quotations omitted).

Since *Velez,* the Court of Appeals has revisited the issue and has determined

that even if there is a potential conflict of interest, this Court must apply the arbitrary and capricious standard. *See Whitney v. Empire Blue Cross and Blue Shield,* 106 F.3d 475, 477 (2d Cir.1997). Where a plan gives an administrator discretion as a fiduciary, the Supreme Court in *Firestone, supra,* instructed that a conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion. 489 U.S. at 115, 109 S.Ct. 948. Our Circuit has held that a district court must give even a conflicted insurer the same deference as an independent fiduciary. *See DeFelice v. American International Life Assurance Co. of New York,* 112 F.3d 61, 66 (2d Cir.1997); *Whitney,* 106 F.3d at 477. The Court in *Whitney* stated that when the issue of a conflict of interest is raised, "a reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists but that the conflict affected the reasonableness of the Committee's decision." 106 F.3d at 477 (internal quotations omitted). Plaintiff has failed to show that Met Life's decision to deny LTD benefits was unreasonable or that a conflict of interest affected the reasonableness of the Plan Administrator's decision. Accordingly, Met Life's motion for summary judgment is granted.

## 2. Severance Pay

Next, plaintiff argues that IBM wrongfully denied him severance pay when his employment at IBM ended. Under IBM's severance plan, separation pay is a benefit available to IBM employees only under certain circumstances. The IBM severance plan makes it clear that separation pay is not an automatic entitlement given to every employee who leaves IBM. Rather, it is given solely in IBM's discretion, mostly as a transition payment to assist employees who must move to other employment due to termination from IBM.

The Separation Allowance Plan Summary Plan Description ("SAP SPD") vests the Plan Administrator, IBM's Director of Workforce Management, with exclusive discretionary authority to determine whether there has been a termination within the intent of the SAP warranting the provision of separation pay. It also provides that the decisions of the Plan Administrator are "final, conclusive and binding." SAP SPD at 2.

Under the terms of the severance plan, separation pay is to be made available to an employee who is terminated by the company notwithstanding the fact that he or she is otherwise willing and able to work. In such situations, separation pay may be given, equaling one week of pay for each year of service, up to a maximum of 13 weeks of pay. Separation pay is not available under three circumstances: (1) an employee ends his regular employ to collect LTD benefits; (2) an employee is unwilling to work, as is the case when an employee resigns completely of his own accord, abandons his or her job, or otherwise refuses to work—in which case his or her termination from IBM would be deemed "employee-induced," or (3) an employee is unwilling or unable to execute a broad release of all claims he has or may have against IBM, its agents and those associated with IBM for certain purposes, including Met Life in its role as claims administrator of the LTD plan. These terms of the severance plan are not in dispute.

Plaintiff has failed to demonstrate that IBM's decision not to provide plaintiff with severance pay under its plan was arbitrary and capricious. *See Accardi v. Control Data Corp.,* 836 F.2d 126, 128 (2d Cir. 1987); *Katz v. Colonial Life Insurance,* 951 F.Supp. 36, 39 (S.D.N.Y.1997). Here, plaintiff failed to return to work after his S & A leave had expired and made no effort to do so. His employer reasonably concluded that he had quit his job. Summary judgment is granted with regard to plaintiff's claims against IBM for wrongful denial of separation pay.

## *CONCLUSION*

For the foregoing reasons, summary judgment is granted on plaintiff's claims

(1) against IBM for denial of long-term disability benefits and severance pay, and (2) against Met Life for denial of long-term disability benefits. The Clerk of the Court is directed to enter judgment for the defendants and close the case.