**Paul J. WOJCIECHOWSKI, Plaintiff–Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY and IBM Corporation, Defendants–Appellees.**

No. 00–7359.

United States Court of Appeals, Second Circuit.

Jan. 12, 2001.

---

* The Honorable Alfred V. Covello, of the United States District Court for the District of Connecticut, sitting by designation.

Helene Migdon Greenberg, Elmsford, NY, for appellant.

John Houston Pope, Hogan & Hartson LLP, New York, NY, for IBM Corporation.

Carl J. Schaerf, Lester, Schwab, Katz & Dwyer, New York, NY, for Metropolitan Life Insurance Company.

Present FEINBERG, SOTOMAYOR and KATZMANN, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *Judge*), it is hereby

ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is AFFIRMED.

Appellant Paul J. Wojciechowski ("appellant") appeals from a judgment of the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *Judge*) granting summary judgment to his former employer, appellee International Business Machines Corporation ("IBM"), and to the claim administrator of IBM's long-term disability plan, appellee Metropolitan Life Insurance Company ("MetLife"). *See Wojciechowski v. Metropolitan Life Ins. Co.*, 75 F.Supp.2d 256 (S.D.N.Y.1999). Wojciechowski alleges that he was wrongfully denied benefits under IBM's Long Term Disability ("LTD") Plan and severance pay under IBM's Separation Allowance Plan ("SAP") in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

■ Pursuant to both IBM's LTD Plan and SAP, plan administrators and fiduciaries are vested with complete discretion to interpret the language of the plans and to determine eligibility for benefits. *See* LTD Plan, § 2.5.3 ("the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan."); SAP Summary Plan Description ("SPD") ("[T]he Plan Administrator shall have full and exclusive discretionary authority to determine eligibility for a separation allowance based upon IBM's intent in establishing an allowance, as expressed in the plan documents" and "retains full and exclusive discretionary authority to construe the provisions and interpret the language of the ... Plan[].")". Where, as here, an ERISA-regulated benefit plan "confer[s] upon a plan administrator the discretionary authority to determine eligi-

bility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995).

■ Under the "highly deferential" arbitrary and capricious standard, the "question before a reviewing court ... is whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir.1995) (internal quotation marks omitted). Thus, on a motion for summary judgment, the issue is not, as appellant here argues, whether an administrator was presented with conflicting evidence on matters affecting eligibility for benefits. Rather the issue is whether the administrator's decision resolving that conflict was arbitrary and capricious, *i.e.*, whether there is a material issue of fact in dispute regarding the factors considered by the administrator, and whether as a matter of law his or her decision based on those factors constitutes a clear error of judgment. *See Smith v. Ameritech*, 129 F.3d 857, 864 (6th Cir.1997) (affirming grant of summary judgment because "plaintiff has failed to raise a genuine issue as to whether it was arbitrary or capricious for the ... Plan administrator to conclude" that plaintiff was ineligible for benefits).

■ No such dispute or error exists here with respect to the denial of benefits under either plan. Appellant, a long-time IBM employee who was granted permission not to relocate when his department moved to North Carolina in February 1996, filed an application with MetLife for LTD benefits on October 21, 1996.[1] Al-

---

1. Appellant's claim that MetLife's role as both     adjudicator and payor of claims creates a

though IBM had created a new position for him in White Plains, New York, appellant never commenced serving in that position and instead applied for and received several successive terms of short-term disability leave.

Appellant's application for LTD benefits in October 1996 attached a medical report from his doctor and neurologist, Kailash C. Pani, and a statement from Pani that appellant was permanently disabled by, among other things, "Photokinetic Epilepsy (Computer Vision Syndrome)." Met-Life denied appellant's application on March 5, 1997, based on a review of the reports of Pani, IBM-retained neurologist Elliot Gross, MetLife-retained neurologist Orly Avitzur, and MetLife-retained occupational medicine specialist Robert Bertrand (who did not examine appellant but performed a review of his medical records). Although Pani diagnosed significant neurological ailments that he claimed rendered appellant incapable of performing his job, Gross concluded that appellant had "no neurological disability and he is able to work full time in his former position," Avitzur concluded that there was "no evidence of neurological disability at this time and that this patient is capable of working full-time in his managerial position,"[2] and Bertrand concluded:

[M]edical records provided ... do not support a neurological disability based on any of the diagnoses presented by Dr. Pani. Both Dr. Gross and Dr. Avitzur agree that there is a mild impairment from cervical pain. Dr. Pani's medical reports and testing of Mr. Wojciechowski support this. Other diagnoses listed by Dr. Pani for Mr. Wojciechowski are not supported by objective medical findings and do not suggest any impairment in Mr. Wojciechowski's ability to perform his job.

MetLife thus concluded that appellant did "not meet the definition of disability as defined in the group plan." Although appellant criticizes the conclusions of the above reports, he makes no claim that MetLife excluded relevant factors, or documents submitted by appellant presenting relevant evidence relating to such factors, in its review.

Appellant filed an appeal with MetLife on August 29, 1997. On October 16, 1997, MetLife, after "review[ing] all the medical and vocational information in [its] possession in conjunction with an Independent physician's file review,"—including, among other things, a new report of a consultation done at Pani's request by the "Compre-

conflict of interest requiring appellate review pursuant to a standard less deferential than "arbitrary and capricious" is unavailing. While it is true that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (internal quotation marks and brackets omitted), we have held that "a reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists, ... but that the conflict affected the reasonableness of the ... decision." *Sullivan v. LTV*

*Aerospace and Defense Co.*, 82 F.3d 1251, 1259 (2d Cir.1996) (internal quotation marks omitted). Appellant has made no such showing here.

**2.** On January 28, 1997, MetLife sent Avitzur's report to Pani for comment. In response, Pani accused Avitzur of, among other things, including "false and fraudulent medical information" in her report and "arrogantly recommend[ing]" a treatment plan. Pani's letter concluded: "In my opinion, this type of Evaluation Process tantamounts [sic] to Fraudulent Medical Malpractice, Medical Incompetence, and Conspiracy to Manufacture Evidence."

hensive Epilepsy Center"[3]—upheld the denial of benefits, concluding that "the medical evidence does not support a disability which would preclude Mr. Wojciechowski from performing the duties of his own occupation as defined by the group plan." Again, appellant does not claim that relevant evidence submitted by him was excluded from this review.

In light of the above, we hold that MetLife's denial of LTD benefits was not a clear error of judgment.[4] Appellant's doctor was the only one of the three who examined him, and of the four who reviewed his records, to conclude that appellant suffered from the significant list of ailments diagnosed by Pani and that those ailments severely restricted appellant's ability to function in his job. Furthermore, while Pani's medical reports contained secondhand accounts of tests allegedly performed on appellant, no objective testing results appear to have been submitted to MetLife as part of appellant's application or appeal. While appellant notes that such test results could have been requested from Pani, it was appellant's burden under the Plan, not MetLife's, to submit, at his own expense, "proof of disability, satisfactory to Metropolitan." LTD Plan, § 2.4.1.[5]

IBM's denial of separation pay under the SAP also does not constitute a clear error of judgment. The SAP SPD provides that separation pay is not an "automatic entitlement[ ]," that it will be not be paid "in employee-induced terminations" and that the Plan Administrator "shall be the sole determiner in his/her discretion, of whether there has been a termination within the intent of any of the IBM Separation Allowance Plans." The SPD further provides that "[t]he purpose of the IBM Separation Allowance Plans is to provide a transition payment to assist the employee during the period when the employee is seeking other employment because of termination of their [sic] employment."

Both parties agree that when appellant filed for LTD benefits, he was allowed to continue his absence from work because IBM granted him an additional period of short-term disability leave that ended on December 19, 1996. However, that deadline came and went without appellant returning to work or inquiring about the need to do so. When appellant inquired about separation pay for the first time in the fall of 1997, IBM informed him by letter dated January 16, 1998 that he was deemed to have voluntarily resigned because: 1) IBM had a position for him but

---

3. The new report found that the results of a neurologic examination were essentially normal and concluded: "Only after video-EEG monitoring, recommendations and treatment can be made." We note that shortly before MetLife issued its decision reviewing the initial denial of benefits, Bertrand, evaluating this new report during consideration of the appeal, advised MetLife in an October 1, 1997 letter that "no further documentation from Dr. Borchert [of the Comprehensive Epilepsy Center] or results of his video monitoring were included in the available records."

4. Because the decision was not arbitrary and capricious, we need not reach the issue of whether IBM, by virtue of its role as the

named Plan Administrator, would also have been liable for the decision. We note, however, that MetLife, both under the terms of the Plan and as demonstrated in the record, appears to have been solely responsible for the claims application and decisionmaking process, and also note that the examination conducted by IBM's doctor occurred well before appellant applied for LTD Benefits.

5. We also note that the record contains evidence, not contradicted by appellant, that Pani was somewhat uncooperative in response to MetLife's attempts to obtain additional input and objective documentation from him.

he had not accepted it, and 2) he had never returned to work after December 19, 1996. IBM's interpretation of "employee-induced termination" as including a situation where an employee—who IBM's doctor states is medically able to perform his job—refuses to show up for work is more than reasonable, particularly where that employee's absence from work is not a "transition period" to other employment but rather a period in which the employee is attempting to get disability benefits. Thus, like the LTD benefit decision, this decision was not arbitrary and capricious.

We have considered appellant's remaining arguments and find them to be without merit. For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.