Randall V. BJORK, Plaintiff,

v.

EASTMAN KODAK COMPANY,
Defendant.

No. 00–CV–6005L.

United States District Court,
W.D. New York.

Sept. 25, 2001.

Andrew W. Goodell, Jamestown, NY, for Plaintiff.

Paul J. Yesawich, III, Harris Beach LLP, Rochester, NY, for Defendant.

DECISION AND ORDER

LARIMER, Chief Judge.

## Background

In this action, plaintiff Randall Bjork ("Bjork") claims that Eastman Kodak Company ("Kodak") wrongfully denied him termination allowance benefits, and that the denial of such benefits by defendant Pamela Cromp, in her capacity as the plan administrator for defendant Kodak Termination Allowance Plan ("TAP" or "the Plan"), was arbitrary and capricious.[1] His suit for benefits falls within the purview of section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), which allows a private plaintiff to sue "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Both plaintiff and defendants now move, under FED. R. CIV. P. 56, for summary judgment. For the reasons that follow, defendants' motion is granted, plaintiff's motion is denied, and plaintiff's complaint is dismissed with prejudice.

1. Originally, Kodak was the only named defendant. There is no question that Kodak was never a proper party in light of the parties' concession that this action for monetary relief is governed by ERISA and the fact that Kodak does not serve as the plan administrator. In this circuit, it is well-established that "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998), *quoting Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989); *see also Walsh v. Eastman Kodak Co.,* 53 F.Supp.2d 569, 574 (W.D.N.Y.1999) (dismissing plaintiff's ERISA claim against employer); *Muller v. First Unum Life Ins. Co.,* 23 F.Supp.2d 231 (N.D.N.Y.1998) (denying plaintiff's motion to amend complaint to add ERISA claim against employer); *Esden v. Bank of Boston,* 5 F.Supp.2d 214, 217 (D.Vt.1998) (dismissing plaintiff's claim pursuant to ERISA § 502(a)(1)(B) against employer); *Brannon v. Tarlov,* 986 F.Supp. 146, 152 (E.D.N.Y.1997) ("[t]he plan participant's employer is not a proper party defendant [under § 502(a)(1)(B) ]"), *aff'd,* 164 F.3d 617 (2d Cir. 1998). In light of these facts, I ordered simultaneous submissions from the parties addressing this issue and its impact on this case. Dkt. # 25. Thereafter, plaintiff conceded that Kodak was not a proper party. The parties have, therefore, stipulated to substitute Cromp in her capacity as plan administrator and the Plan as defendants in this action rather than Kodak. Dkt. # 27.

## Factual Background

*Plaintiff's Employment*

Kodak hired Bjork in 1985. During the course of his employment, Bjork held several sales and marketing positions. In December 1997, Bjork's position as a regional merchandising director was eliminated in a corporate restructuring. That same month, Kodak offered Bjork, and Bjork accepted, the position of key account manager. According to defendants, the new position did not require a different skill set than that required of the regional merchandising director position, or any special training. Bjork began in that position on January 1, 1998.

Almost as soon as Bjork assumed his new duties, there were problems with his performance. The evidence establishes that plaintiff's supervisor, Brad Hunsaker ("Hunsaker"), was displeased with Bjork's performance. For example, Hunsaker noted that Bjork did not understand the business, was consistently inaccurate in his forecasting, displayed poor account management skills, and lacked initiative in developing solutions to improve account relationships. Hunsaker placed Bjork on a 60 day performance improvement plan. Although Bjork attempted to comply with Hunsaker's requests, Bjork failed to achieve the results Hunsaker expected. In February 1999, Bjork was placed on a final warning and informed that unless he met specific performance criteria within the next month, his employment would be terminated. At about the same time, Bjork presented Hunsaker with a letter offering his resignation in exchange for certain termination benefits. In that letter, Bjork conceded that "it appears the good-faith efforts I have been making are not meeting with your expectations." Kodak rejected Bjork's offer, and terminated him in March 1999 because of his continued inability to improve his job performance.

*The Plan*

The Plan is an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1) of ERISA. It "is designed to provide benefits to eligible employees whose employment is terminated as a result of a layoff, special separation program or divestiture." The Plan, Dkt. # 8, Ex. 26, Art. 1. The Plan provides for three types of benefits: a termination allowance benefit, a retraining allowance, and outplacement services. Only the termination allowance benefit is at issue in this case.[2]

To qualify for the termination allowance benefit under the Plan, a person must: (1) be employed in the United States as a regular full-time or part-time employee; (2) be terminated due to layoff, special separation, or divestiture; (3) work until a termination date acceptable to Kodak; (4) execute an employees' agreement acceptable to the senior vice president and director of human resources; and (5) execute a waiver, release and covenant not to sue acceptable to the senior vice president and director of human resources. *Id.*, Art. 3.01. Only terminations due to layoff are at issue here. A "layoff" under the Plan can occur in one of three ways: a decrease in the workforce, a relocation, or the ina-

---

2. The purpose of the TAP retraining allowance benefit is to provide financial assistance for those former employees who undertake courses of study to develop skills needed for a new career. *Id.*, Art. 7.01. The purpose of the TAP outplacement services benefit is to provide counseling and assistance in developing job search skills and strategies for employees who are or are about to become terminated for an approved reason. *Id.*, Art. 8.01. Although plaintiff repeatedly claims that he is entitled to TAP benefits, he has not submitted any evidence that he has incurred any eligible expenses under the TAP retraining allowance, or that he sought and was denied outplacement services from Kodak.

bility to meet job requirements. *Id.*, Art. 4.01.

Because there was no decrease in the workforce or relocation with respect to the Bjork's last position, only the inability to meet job requirements is implicated here. Although plaintiff questions Cromp for not analyzing his claim as falling under a decrease in workforce, *see* Dkt. # 18, pp. 5–6, he has offered no evidence of any decrease in workforce with respect to his position. In fact, the record establishes that plaintiff was terminated for cause.

Under the terms of the Plan:

Layoff results when an Employee makes a good-faith effort but is unable to perform overall job requirements satisfactorily, provided the Employee satisfies each of the following criteria:

(1) has been employed by the Company for one year or more; and

(2) has experienced a "significant job change." For this purpose, a significant job change is a new job which:

— results in a change in job family code (specified in Compensation Plan 2J2), and

— requires a structured training period, or

— requires a different skill set to perform the minimum expectations of the job than the position previously held; and

(3) has made the significant job change as a result of the Company's initiative rather than the Employee's request; and

(4) has made a "good-faith effort" in the new position. For this purpose, good faith effort means a sustained effort to meet all the stated requirements of the new job, including pursuing all stated recommendations and

suggestions made in progressive counseling.

*Id.*, Art. 4.01(c).

The Plan grants the plan administrator "the power to make, publish and apply those rules and regulations he or she deems necessary to carry out the provisions of Plan." *Id.*, Art. 13.01(c). The Plan further provides that "the Plan administrator shall construe and interpret the terms and conditions of the Plan and shall determine all questions arising in the administration, interpretation, and application of the Plan and all questions regarding eligibility for benefits under the Plan." *Id.* In addition, the publication, *You and Kodak,* which is disseminated among employees, notes that the plan administrator is afforded "complete discretionary authority to construe the plans as to eligibility for participation and benefits." *You and Kodak,* Dkt. # 6, Ex. A, p. 335.

*Plaintiff's Claim and Appeal*

Plaintiff applied for TAP benefits in May 1999. Dkt. # 8, Ex. 27. In a letter dated May 20, 1999, Kodak advised Bjork's attorney that Bjork was ineligible for such benefits under the Plan because Bjork did not experience a "significant job change" when he moved from his last position of regional merchandising director to key account manager, and, therefore, was not terminated due to a "layoff" as that term is defined in the Plan. *Id.*, Ex. 28. On May 28, 1999, Kodak confirmed the denial of Bjork's application and provided information regarding the process by which Bjork could appeal the decision. *Id.*, Ex. 29.

Bjork, through his attorney, appealed that decision by letter dated July 15, 1999. *Id.*, Ex. 30. Bjork claimed to be entitled to benefits because he had experienced a significant job change when he moved to his last position, and that he had made a good-faith effort but was unable to per-

form the overall job requirements in the new position satisfactorily. *Id.*

On August 4, 1999, following a review of the administrative record, Cromp determined that Bjork was ineligible for benefits under the Plan because he did not experience a significant job change as required by the Plan. *Id.*, Ex. 32.

This action followed. In it, plaintiff seeks, *inter alia*, $197,500 in TAP benefits.[3]

## DISCUSSION

On a motion for summary judgment, a court's responsibility is to determine whether there are issues to be tried. *See Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130, 133 (2d Cir.1999); *Larsen v. NMU Pension Trust*, 902 F.2d 1069, 1073 (2d Cir.1990). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Larsen v. NMU Pension Trust*, 902 F.2d at 1073. A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### Contentions of the Parties

Defendants contend that plaintiff's complaint should be dismissed because there is no evidence that the plan administrator's determination of plaintiff's ineligibility for TAP benefits was arbitrary and capricious, and, to the contrary, there is ample evidence to support that determination. In particular, they maintain that Bjork's change in job code was administrative, rather than substantive, and did not serve as any recognition that his job duties had changed significantly. They also argue that Cromp determined that Bjork's experience within Kodak sales and marketing areas provided him with the requisite skill set and knowledge base to perform the key account manager position without any structured training. That determination led Cromp to the conclusion that Bjork did not suffer a "significant job change," which meant he was not terminated due to a "layoff" as provided in the Plan. Cromp's review of the events that led to Bjork's termination also led her to the conclusion that Bjork was terminated for nothing other than poor job performance. It was these facts that led Cromp to her determination that plaintiff was ineligible for TAP benefits.

Plaintiff, on the other hand, maintains that summary judgment should be granted in his favor. He argues principally that he experienced a "significant job change," which meant he was eligible for a termination allowance benefit as provided in the Plan. He claims that the new position involved a different skill than that which he needed for the position he had previously held and that Kodak should have provided the necessary training for the new job. In addition, although he did not raise the following arguments in his appeal to the plan administrator, he now argues that Cromp violated her fiduciary duty to conduct a full and fair review of his appeal because she failed to consider all of the applicable grounds for Bjork's eligibility for TAP benefits, and that since Cromp is a Kodak employee and since the Plan is funded by Kodak, a conflict of interest

---

**3.** Even if Bjork were deemed eligible under TAP, it appears that, based upon his length of service, he would have been entitled to 26 weeks of compensation, a small fraction of the amount sought. *See* Plan, Art. 5.01.

exists, which tainted her review and the decision she reached. He further contends that he was placed in his last position as part of a covert attempt to avoid paying him TAP benefits.

## Standard of Review

■ The parties agree that under the terms of the Plan at issue here, the arbitrary and capricious standard of review, rather than a *de novo* standard of review, applies. *See Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d 243 (2d Cir. 1999) (holding that where a benefit plan reserves to the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, denials of benefits challenged under § 1132(a)(1)(B) are subject to the deferential arbitrary and capricious standard); *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

■ "The arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute*, 46 F.3d 1264, 1271 (2d Cir.1995) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)) (internal quotation marks omitted). Under this standard, a plan administrator's decision to deny benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Std. Life Ins. Co.*, 181 F.3d at 249 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)). A district court may not substitute its judgment for that of the plan administrator, and a

court's review under the arbitrary and capricious standard is limited to the administrative record. *Wojciechowski v. Metropolitan Life Ins. Co.*, 75 F.Supp.2d 256, 262 (S.D.N.Y.1999).

## Defendant's Denial of Bjork's Application for Benefits

■ Applying the foregoing principles to the case at bar, the denial of plaintiff's application for benefits was neither arbitrary nor capricious. In short, Cromp determined that plaintiff did not experience "a significant job change" as that is defined in the Plan. The Plan itself defines "a significant job change" as

a new job which:

— results in a change in job family code (specified in Compensation Plan 2J2), **and**

— requires a structured training period, or

— requires a different skill set to perform the minimum expectations of the job than the position previously held

. . . .

The Plan, Art. 4.01(c) (emphasis added). In other words, an employee does not experience "a significant job change" unless the job family code changes *and* the new position requires a structured training period or a different skill set to perform the minimum expectations of the job. Therefore, any job change that occurs before those requirements are satisfied cannot be a "significant job change" and, therefore, cannot be a layoff based upon an inability to meet job requirements, rendering the employee ineligible for a termination allowance benefit under TAP.

Bjork's regional merchandising director position had a job code of 660 and his key account manager position had a job code of 664. Reviewing the facts in the light most favorable to plaintiff and even assuming

that Bjork's last position resulted in a change in job family code, the evidence in the record nevertheless establishes that no structured training period or different skill set was required for the key account manager position.

With respect to the structured training prong, the evidence establishes that such training is job specific, not employee specific. The record further reveals that no structured training program had been established for the key account manager position, nor was one required. Moreover, other employees successfully moved from the regional merchandising director position (which Bjork previously held) to the key account manager position (which Bjork later held) without any structured training.

Furthermore, it is undisputed that Cromp compared the skill sets required to perform both positions in question in an effort to determine whether Bjork experienced a "significant job change" as that is defined in the Plan. Although the duties and responsibilities of the two positions were not identical, Cromp concluded that the key account manager position did not require a different skill set to perform the minimum expectations of the job than that required of the regional merchandising director position. In arriving at that conclusion, Cromp analyzed the relevant job descriptions for the two positions. The job descriptions generally reveal that both positions involved sales and marketing responsibilities, and neither job description indicates that more than an undergraduate degree was required. It appears that Cromp also spoke to the individual who drafted one of the job descriptions as well as a vice president in Kodak's consumer imaging group to learn more about plaintiff's change in jobs and whether the two positions at issue required different skill sets. I further note that as early as December 1997, long before plaintiff even applied for benefits, Kodak referenced these positions as "comparable." Dkt. # 8, Ex.2.

Plaintiff's complaint seems in conflict on this issue as to whether the jobs were comparable. He asserts in his complaint that he "did an excellent job as Key Account Manager" (Complaint, Dkt.# 1, ¶ 13). This assertion undermines his arguments that the new position was so different that it required structured training.

In any event, plaintiff's subjective belief that he needed special training or lacked the requisite skills for the new position is irrelevant. What is relevant is the fact that Cromp's determination was based on consideration of relevant factors and supported by substantial evidence. Based upon the records before me, I believe that substantial evidence supports Cromp's determination that Bjork's assumption of the key account manager position did not require structured training or a new skill set.

Plaintiff now also claims he is entitled to a termination allowance benefit because there is evidence of a possible downsizing, and he faults Cromp for failing to inquire whether there was a decrease in the workforce, and, as a result, failing to conduct a full and fair review of his appeal. *See* 29 U.S.C. § 1133(2) (providing that every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim").

■ The requirement of a full and fair review " 'must be construed not only to allow a pension plan's trustees to operate claims procedures without the formality or limitations of adversarial proceedings but also to protect a plan participant from arbitrary or unprincipled decision-mak-

ing." ' *Crocco v. Xerox Corp.,* 956 F.Supp. 129, 139 (D.Conn.1997) (quoting *Grossmuller v. International Union,* 715 F.2d 853, 857 (3d Cir.1983)), *aff'd in relevant part,* 137 F.3d 105, 108 (2d Cir.1998). In *Crocco,* the court applied the following criteria for determining whether the requirement of a "full and fair review" had been met:

'[T]he plan's fiduciary must consider any and all pertinent information reasonably available to him. The decision must be supported by substantial evidence. The fiduciary must notify the participant promptly, in writing and in language likely to be understood by laymen, that the claim has been denied with the specific reasons therefor. The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence. If the fiduciary allows third parties to appear personally, the same privilege must be extended to the participant.'

956 F.Supp. at 139 (quoting *Grossmuller,* 715 F.2d at 857–58).

█ In support of his allegation that his claim for benefits did not receive a full and fair review, plaintiff contends that Cromp did not discharge her duty to develop a complete record. For a variety of reasons, that argument lacks merit. I note initially that plaintiff based his appeal to the plan administrator on his inability to meet job requirements under article 4.01(c) rather than on a decrease in workforce under article 4.01(a). Dkt. # 8, Ex. 30. This Court is charged with reviewing the appellate decision of the Plan which decision was made based on the contentions of plaintiff on his appeal from the initial denial. Because plaintiff failed to raise this matter adequately before the plan administrator, it cannot now be raised before me. *See Lester v. Reagan Equipment Co. Prof-*

*it–Sharing Plan and Employee Savings Plan,* 91–CV–2946, 1992 WL 211611 (E.D.La.1992) (holding, in an ERISA case, that if a district court were to consider "interpretations of a plan that are not made first before the Plan.... [the] court would be left with no option but to review the plan's terms *de novo,*" an approach which would "encourage plaintiffs to circumvent administrative review and render [*Firestone Tire and Rubber Co. v.*] *Bruch and Pierre* [*v. Connecticut General Life Ins. Co.,* 932 F.2d 1552 (5th Cir.), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) ] meaningless); *see also BankAmerica Pension Plan v. McMath,* 206 F.3d 821, 826 (9th Cir.2000) ("[a] party abandons an issue when it has full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case); *Vizcaino v. Microsoft Corp.,* 120 F.3d 1006, 1015 (9th Cir.1997) (*en banc* ) (Fletcher, J., *concurring in part and dissenting in part* (noting view, joined by four other circuit judges, that a pension plan waived any arguments it did not raise in the administrative process)); *cf. United Federation of Teachers Welfare Fund v. Kramarsky,* 451 F.Supp. 333, 337 (S.D.N.Y.1978) ("reviewing courts generally are not required to consider matters which were not raised in the administrative proceedings").

█ I also note that in reaching her conclusion, Cromp considered all evidence which was reasonably available to her. Moreover, although plaintiff contends that Cromp should have conducted a further investigation by, for example, speaking with Hunsaker, the circumstances leading to plaintiff's termination were amply supplied in the record. The record reveals the long history of plaintiff's performance problems. It is beyond peradventure that plaintiff was terminated because of those

performance problems. Indeed, Hunsaker states in his March 29, 1999 letter to plaintiff that because of plaintiff's unsatisfactory performance, "there is no other alternative but to ... terminate you from the Eastman Kodak Company." Dkt. # 8, Ex. 25. As a result, it was wholly unnecessary for anyone to inquire whether there was a reduction in force that impacted plaintiff. It is clear from the record that no such reduction in force played any part in plaintiff's termination in 1999.

■ In the same vein, plaintiff's counsel's general statements at oral argument, that plaintiff had been denied the opportunity for discovery regarding possible downsizing does not preclude the granting of defendants' motion. Notwithstanding the Court's patience in granting plaintiff a number of extensions and affording him over seven months to respond to defendants' motion for summary judgment, plaintiff never requested discovery pursuant to FED. R. CIV. P. 56(f). *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–1138 (2d Cir.1994) (holding that a reference to Rule 56(f) and to the need for discovery in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit, and "the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate").[4] Indeed, it appears that

at this point, in light of Bjork's cross-motion for summary judgment, he has abandoned his prior discovery requests, apparently content with the information he has submitted to the Court. Furthermore, when pressed at oral argument plaintiff did not offer any specifics regarding how any such discovery is reasonably expected to create a genuine issue of material fact, a seemingly insurmountable hurdle given that a district court's review in this context is limited to the administrative record. *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995); *Boesel v. Chase Manhattan Bank, N.A.,* 62 F.Supp.2d 1015, 1031 (W.D.N.Y.), *aff'd,* 208 F.3d 202 (2d Cir.2000); *Fitch v. Chase Manhattan Bank, N.A.,* 64 F.Supp.2d 212, 224 (W.D.N.Y.), *aff'd,* 208 F.3d 202 (2d Cir.2000); *see also Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 381 (6th Cir.1996).

■ Plaintiff also asserts that a conflict of interest is raised by virtue of the fact that the Plan is funded by Kodak and the plan administrator is a Kodak employee. In support, plaintiff cites *Bruch,* 489 U.S. at 115, 109 S.Ct. 948, in which the Supreme Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining

---

4. In any event, a court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. *See Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir.) ("[i]n a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion' ") (quoting *Contemporary Mission, Inc. v. United States Postal Serv.,* 648 F.2d 97, 107 (2d Cir.1981)), *cert. denied,* 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Capital Imaging Assoc. v.*

*Mohawk Valley Medical Assoc.,* 725 F.Supp. 669, 680 (N.D.N.Y.1989) (citing *Waldron v. Cities Serv. Co.,* 361 F.2d 671, 673 (2d Cir. 1966)) (citations omitted) (while "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case ... it does not permit a plaintiff to engage in a 'fishing expedition' "), *aff'd,* 996 F.2d 537 (2d Cir.), *cert. denied,* 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993). Plaintiff does not point to, nor can I fathom, any evidence plaintiff could elicit through additional discovery which would prevent this action from succumbing to defendants' summary judgment motion.

whether there is an abuse of discretion.'" (internal citation omitted). Although plaintiff's responding brief is not clear on this point, plaintiff appears to argue that, because Cromp is a Kodak employee, a more strict review of the denial of benefits is mandated. While it is true that the existence of such an alleged conflict may become a factor in determining whether there is an abuse of discretion, it does not change the standard of review. *Pagan v. NYNEX Pension Plan*, 52 F.3d at 442[5]; *see also Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996) (holding that a reasonable interpretation of a plan will stand unless the *participants* can show not only that a potential conflict of interest exists, but also that the conflict affected the reasonableness of the administrator's decision, and that such burden of proof rests with the plaintiffs); *see also Whitney v. Empire Blue Cross & Blue Shield*, 106 F.3d 475, 477 (2d Cir. 1997). Other than conclusory statements that the decision to deny plaintiff's benefits was tainted by an inherent conflict of interest, plaintiff does not adduce any facts or evidence tending to establish the existence of a conflict or how a conflict, if it existed, affected the reasonableness of the plan administrator's determination. *See Durr v. Metropolitan Life Ins. Co.*, 15 F.Supp.2d 205, 210 (D.Conn.1998).

Bjork's contention that he was placed in his last position as part of a covert attempt to avoid paying him TAP benefits is based on nothing more than utter speculation. Plaintiff has offered no evidence to support his conspiratorial theory. First, it was Kodak, plaintiff's employer, that offered him the key account manager position in 1997; neither Cromp nor the Plan had any connection with that decision. In addition, given that plaintiff was employed at-will, if Kodak truly harbored such a devious motivation, it could have saved more money by terminating him in 1997 and paying the termination allowance benefit, rather than placing him in another position with the same salary he had previously earned.

On the record that was before the plan administrator, I believe that the conclusion that Bjork was ineligible for TAP benefits was not arbitrary or capricious. In light of the evidence supporting Cromp's determination, I do not believe that "there has been a clear error of judgment" on Cromp's part, *Jordan*, 46 F.3d at 1271, or that the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan*, 52 F.3d at 442; *see also Polizzano v. Nynex Sickness & Accident Disability Benefit Plan*, 189 F.3d 461 (2d Cir.1999) (holding, in unpublished opinion, that the Court "cannot reweigh the evidence so long as substantial evidence supports the plan administrator's determination"); *Wojciechowski v. Metropolitan Life Ins. Co.*, 75 F.Supp.2d at 262; *Martin v. E.I. DuPont de Nemours & Co.*, 999 F.Supp. 416 (W.D.N.Y. 1998).

In short, I agree with the plan administrator's determination, but, even if I did not, the conclusion of the plan administrator is certainly a reasonable one in light of the language involved and certainly is neither arbitrary nor capricious.

## CONCLUSION

Defendants' motion for summary judgment (Dkt.# 6) is granted, and plaintiff's cross-motion for summary judgment

---

**5.** Even considering the fact that Cromp is employed by the same entity which funds the Plan, and the possible conflict of interest that might result, I find nothing in the record to suggest that this played any part in Cromp's decision. *See Pagan v. NYNEX Pension Plan*, 52 F.3d at 443.

(Dkt.# 16) is denied. The complaint is dismissed with prejudice.

IT IS SO ORDERED.